United States District Court
District of Massachusetts

Derek Cryer
                    Plaintiff

- v -

                              Case No:

Carol Mici, Commissioner
Douglas Demoura, Superintendent
Patrice Hollomon, Director of Treatment
                                        Defendants

## Introduction

This is a civil rights action Filed by Derek Cryer, A,
state prisoner, filing for damages and other relief under
42 U.S.C. Section 1983 Alleging violations of the Due
Process Clauses of the 14th Amendment, And Part One
Article 1, 10 and 12 of the Massachusetts Constitution.
Also Alleging Religious violations under the 1st Amendment,
Part One Article 2 of the massachusetts Constitution, the
Massachusetts General Laws Chapter 127 section 88, and
the 103 Code of Massachusetts Regulations 471. Also
Defendants have and are still in direct violation of
A Court Order.

## Jurisdiction

(1) The Court has jurisdiction over the plaintiffs'
Claims of violation of Federal Constitutional rights under
42 USC §§ 1331(1) and 1343.

(1)

② The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. §1367.

## Parties

③ The Plaintiff, Derek Cryer is An inmate patient being housed in a specialized Unit for "Seriously Mentally Ill" (SMI) prisoners at MCI-Cedar junction at Walpole 2405 Main st, P.O. Box 100, South Walpole Massachusetts 02071.

④ The Defendant Carol Mici who's Address is At 50 Maple st, Suite 3, Milford, MA. 01757-3698 is being Sued in her individual and official Capacity.

⑤ The Defendant Douglas DeMoura who's Address is 2405 Main st, P.O. Box 100, South Walpole MA. 02071 is being Sued in his individual and official Capacity.

⑥ The Defendant Patrice Hollomon who's Address is 2405 Main st, P.O. Box 100, South Walpole, MA. 02071 is being Sued in her individual and official Capacity.

⑦ Defendant's Carol Mici's Responsibilities include reviewing the grievance Appeal process to insure the

②

Sanctity of Any Constitutional Rights Afforded to Prisoners and to Correct Any wrongs which may have been done in the process. Defendant Mici's Also responsible to change Any policy or part thereof which is in direct Conflict or violation of the LAW. Defendant Mici Also has the Power to order those in her charge to do or not do Certain Acts Such As to order Defendant Demoura to Provide me with Due Process hearings And order Defendant Holloman to Provide me Access to Friday Jumah Services. To date Defendant mici has refused to exercise these powers.

(8) Defendant's Douglas Demoura's Responsibilities include him MAKING the Final decisions of inmate grievance Appeals, And He Also has the power to order those under his charge to do or not to do Something. For example, He Could have ordered Defendant Holloman to Provide Friday Jumah Services for me; And He Could have Contacted the Defendant Mici And informed Her that the Current Disciplinary Policies or a part thereof may be in violation of the Law.... but Defendant Demoura Chose not to do neither.

(9) Defendant Patrice Holloman's Responsibilities Are to provide plaintiff with religios Services According

to the Code of Massachusetts Regulations titled
103 CMR 471 And the prison's Religious Service Review
Committee Handbook. Both of these Sources Allow
Plaintiff Access to watch His Religious Services.
However, Literally, with the exception of Two (2)
times, Plaintiff has been denied Access to watch
His Religious Services by Defendant Holloman From
April 26, 2018 up to the present date.

(10) Plaintiff has been A Muslim with the Nation
of Islam Since April 26, 2018 and Since that time
He has received 1% of Religious instruction
of Any Kind due to the denied requests of the defendants.
Watching "Jumah Services" on "Friday" is A Central
Tenet According to my studies And is obligatory As is
participating in "Ramadam" And "Weekly studies".
After years of being lied to by defendant Holloman with
the hopes of practicing my religion, and with the
denials of grievances by defendants Demoura And
Mici, Plaintiff has no choice but to seek
redress from the Court.

<u>Facts</u>

(11) The Defendants admit that they deny the
Plaintiff Access to Due Process Disciplinary Hearings For
Disciplinary Categories Considered to be lesser offenses.

(4)

(12) The Defendants have denied Plaintiff Access to Religious Services from April 26, 2018 up to the present date of the filing of this complaint.

## Denial of Due Process

(13) On August 22, 2017 a Disciplinary Report was written against the Plaintiff for making Alledged threats, which was given lesser Category offenses.

(14) On the exact same day without being given a hearing of any kind Defendants Disciplined Plaintiff by Sanctioning him to Eighteen (18) different Sanctions (for example, 1 week loss of Radio, Loss of Phase 3, Loss Phase 4, Loss Phase 2, 6 weeks loss of Television, 7½ Month Loss of Edible Canteen Priviledges, 10½ Months loss of Contact Visits, etc).

(15) Plaintiff Formally Challenged his right to a due process hearing on September 12, 2017 by filing an Informal Complaint form. (Exhibit 1)

(16) Plaintiff Filed a Formal Grievance to Challenge his right to a hearing. (Exhibit 2)

(17) The Formal Grievance was denied as it cited Prison Policy.        (Exhibit 3)

(18) Plaintiff Appealed the denied grievance decision to Defendant Demoura by citing current policy which would allow Plaintiff to be Afforded a due process hearing. (Exhibit 4).

(19) However, on October 19, 2017 Defendant Demoura Denied Plaintiffs Appeal.   (Exhibit 5)

(20) As the Current Commissioner Defendent Mici has taken no Action to Correct this Due Process Violation of Law.

(21) On September 28, 2019 Plaintiff was Placed on "Accountability Status" (A Form of Segregation) For having "too many" Postage Stamps in his Cell. Immediately Without Any hearing he was brought to Segregation And given Also the Following Automatic Sanctions, loss of Phone Call, Partial loss of Canteen Priviledges, loss of Reduced Restraint Status Possibility, loss of Job opportunity, loss of Graduation possibility etc.

(22) On October 16, 2019 Plaintiff was told by staff that he made threatening Statements. Plaintiff was escorted back to his cell where he was Automatically Disciplined And given the

6

Follow Sanctions: loss of Phase 3, Loss of Phase 2, Loss of Television, Loss of Radio, Loss of Canteen, Loss of 2 Phone Calls, Loss of Possible Reduced Restraints, Loss of Visitation etc.

(23) After no progress was made through Verbal Communication by plaintiff to prison staff in regards to paragraph 21 and 22 of this Complaint, Plaintiff Filed An Informal Complaint. (Exhibit 6)

(24) On February 6, 2020 I Filed A grievance to state a Claim For my Right to a due Process hearing.                     (Exhibit 7)

(25) On March 12, 2020 The Above grievance was denied; Citing Policy          (Exhibit 8)

(26) On March 16, 2020 Plaintiff Filed A Grievance Appeal.          (Exhibit 9)

(27) On April 30, 2020 Defendant DeMoura Denied Plaintiff's request For due Process hearings now, in the past or in the Future.          (Exhibit 10)

(28) Defendant Mici has taken no action to Correct this violation of due process.

(7)

Denial of Religious Services

(29) On April 26, 2018 the Plaintiff informed Defendant Hollomon to register His Religion in the inmate Management System As the Nation of Islam ( Exhibit 11)

(30) On May 1, 2018 Defendant Hollomon Sent a Memo to Plaintiff informing Him of Ramadan (Exhibit 12).

(31) On May 1, 2018 Plaintiff wrote Defendant Hollomon Requesting Access to Jumah Services And Access to a Nation of Islam chaplain. She didn't Reply (Exhibit 13)

(32) However, On May 29, 2018 Defendant Hollomon Did Respond to a May 17, 2018 letter I wrote to her in regards to Access to A N.O.I chaplain And Videos in which She Said She would reach out to the Program Services Division to Find out what options Are Available in regard to Islamic Videos. To date Not one Video has been ordered. ( Exhibit 14 ).

(33) On June 5, 2018 Plaintiff wrote Defendant Hollomon Requesting Jumah Services And Religious CD's And His request has gone unanswered. (Exhibit 15).

(34) On July 3, 2018 Plaintiff wrote Defendant Hollomon requesting Jumah Services And Religious CDS And His request has gone unanswered. (Exhibit 16).

(8)

(35) On August 8, 2018 Plaintiff Wrote Defendant Holloman A letter Asking Her if He did Something to Her which was the Cause of Her denying Him Access to His religious practices.   (Exhibit 17).

(36) On September 6, 2018 Plaintiff Wrote Defendant Holloman to inform Her that He was still being Denied Access to Services And Asked for her intervention (Exhibit 18)

(37) On October 1, 2018 Plaintiff Wrote Defendant Holloman Again Regarding Religious Services   (Exhibit 19).

(38) On November 9, 2018 Plaintiff Wrote Defendant Holloman Requesting Access to Jumah Services (Exhibit 20).

(39) In the Above Paragraphs 35, 36, 37, And 38, Defendant Holloman has Failed to respond to my request. (See Exhibits 17, 18, 19, 20).

(40) On December 20, 2018 Plaintiff Wrote Defendant Holloman for Access to A Muslim chaplain Randy Curet And Educational Religious Videos.   (Exhibit 21)

(41) On December 28, 2018 Defendant Holloman Responded to the Above Paragraph 40, However there was no Actual Services provided.   (Exhibit 22)

(9)

(42) On February 5, 2019 Plaintiff wrote Defendant Holloman inquiring about Jumah Services   (Exhibit 23)

(43) On February 6, 2019 Plaintiff wrote Defendant Holloman inquiring about religious Services (Exhibit 24)

(44) On February 15, 2019 Defendant Holloman responded to the above February 5th and 6th letters Plaintiff wrote to Her (@ Exhibit 23 and 24), However there were no actual Services provided to the plaintiff   (Exhibit 25)

(45) On February 14, 2019 Plaintiff Filed an Informal Complaint with the institution.   (Exhibit 26)

(46) Defendant Holloman tried to Justify Denying me Access to Jumah Services and Religious Practices by Responding to the Above Paragraph 45 informal complaint by stating that chaplain Randy Muhammad met with me (For a total of 5 minutes) in the BMU.   (See Exhibit 26)

(47) On March 10, 2019 Plaintiff wrote to Defendant Holloman requesting Jumah Services, Closed Circuit Television, and Educational DVD's. She Refused to respond (Exhibit 27)

(48) On July 21, 2019 Plaintiff wrote to Defendant Holloman requesting Jumah Services and She refused to respond to His request.   (Exhibit 28)

(10)

(49) On July, 28, 2019 Plaintiff wrote to the Defendant Holloman Requesting Religious Articles in which His request went unanswered  (Exhibit 29)

(50) On August 7, 2019 Plaintiff informed Defendant Holloman that He was still being denied Access to the Jumah Services in All Forms and asked that She do Something about it. This request has gone unanswered (Exhibit 30)

(51) On September 3, 2019 Plaintiff wrote Defendant Holloman Asking Her to Fix the Closed Circuit Television Services to the Jumah Services or Provide Him with Access to CD's in the Law Library in which this request has Also gone unanswered.  (Exhibit 31)

(52) On October 4, 2019 Plaintiff Asked Defendant Holloman Access to Jumah Services in order to Forgo grievance procedures.     (Exhibit 32) Defendant Holloman Failed to respond.

(53) On November 4, 2019 Plaintiff began the informal Grievance process And Filed An Informal Complaint Form.          (Exhibit 33)

(54) On November 20, 2019 Defendant Holloman

(11)

responded to the Informal Complaint in paragraph 53
Stating that there Are issues with the closed Circuit TV
System which interfere with Jumiah Services .... And that
the System will be replaced eventually (see Exhibit 33)

55) On November 26, 2019 Plaintiff Filed A Formal
Grievance requesting religious services (Exhibit 34)

56) On December 6, 2019 The Institutional Grievance
Coordinator Mitchel Dumornay Partially Approved
the Plaintiff's Grievance as mentioned in paragraph 55
And specifically Allowed For Plaintiff to watch Jumah videos
on Friday evenings during His unstructured recreation time
in the Law Library.          (Exhibit 35)

57) On December 9, 2019 Plaintiff Appealed His Religious
Claims to Defendant Demoura. And on December 31,
2019 Defendant Demoura Denied Plaintiffs request without
any explanation.          (Exhibit 36)

58) On December 29, 2019 Plaintiff Filed An Informal
Complaint because he was denied Access to jumah Services
which was in direct opposition to paragraph 56 And the
Partially Approved Agreement. Defendant Hollomon
States A TV will be Purchased For the Program (Exhibit 37)
It must be Noted that No Additional Tv has been
purchased For programming to date.
(12)

(59) On February 20, 2020 Plaintiff Filed An Informal Complaint Informing the prison that on February 7th and 14th of 2020 that Jumah Services Aired on the closed Circuit Television but only showed Video images and no Sound, Plaintiff Requested it be Fixed (Exhibit 38)

(60) On March 6, 2020 Defendant Hollomon replied to Plaintiffs Informal Complaint in Paragraph 59 by stating that the Closed Circuit television System is in good working order And there hasn't been Any other complaints brought Forth regarding the Sound.    (Exhibit 39)

(61) On March 16, 2020 Plaintiff Filed A grievance requesting access to Jumah Services    (Exhibit 40)

(62) On March 31, 2020 Institutional Grievance Coodinater Dumornay Denied Plaintiff's grievance (see Exhibit 40)

(63) On April 10, 2020 Plaintiff Appealed the Denied Grievance in paragraph 62 And the Defendant Demoura Denied Plaintiff's Appeal without Explanation (Exhibit 41)

(64) Since the Final Denied Appeal in paragraph 63 Plaintiffs been denied Access to All Religious Services in Any Form up to this present date, to include access to Jumah Services.

(65) As the Commissioner of the Department of Corrections Defendant Mici is Aware of the Plaintiffs Religious Deprivations but has taken no Action to Correct Any Religious Violations.

(66) On May 4th, 11th, 18th And 25th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(67) On June 1st, 8th, 15th, 22nd, And 29th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(68) On July 6th, 13th, 20th, And 27th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(69) On August 3rd, 10th, 17th, 24th, and 31st of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(70) On September 7th, 14th, 21st, And 28th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(71) On October 5th, 12th, 19, And 26th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(72) On November 2nd, 9th, 16th, 23rd, And 30th of 2018 Defendants Denied Plaintiff Access to Jumah Services.

(82) On September 6th, 13th, 20th, and 27th of 2019 Defendants Denied Plaintiff Access to Jumah Services.

(83) On October 4th, 11th, 18th, and 25th of 2019 Defendants Denied Plaintiff Access to Jumah Services.

(84) On November 1st, 8th, 15th, 22nd, and 29th of 2019 Defendants Denied Plaintiff Access to Jumah Services.

(85) On December 6, 2019 Defendants Denied Plaintiff Access to Jumah Services.

(86) On December 13th and 20th of 2019 Defendants Allowed Plaintiff Access to Jumah Services via CD ROM in the Unit's Law Library.

(87) On December 27, 2019 Defendants Denied Plaintiff Access to Jumah Services.

(88) On January 3rd, 10th, 17th, 24th, and 31st of 2020 Defendants Denied Plaintiff Access to Jumah Services.

(89) On February 7th, 14th, 21st, 28th of 2020 Defendants Denied Plaintiff Access to Jumah Services.

(90) On March 6th, 13th, 20th, and 27th of 2020 Defendants Denied Plaintiff Access to Jumah Services.

(16)

(91) On April 3rd, 10th, 17th, And 24th of 2020 Defendants Denied Plaintiff Access to Jumah Services.

(92) On May 1st, 8th, 15th, 22nd, And 29th of 2020 Defendants Denied Plaintiff Access to Jumah Services.

(93) On June 5th, 12th, 19th, And 26 of 2020 Defendants Denied Plaintiff Access to Jumah Services.

## Exhaustion of Administration Remedies

(94) The Plaintiff has exhausted his Administrative remedies with respect to all claims And all defendants.

## Claims For Relief

(95) The Actions of Defendant Mici And Demoura Affirming Plaintiff's "guilty Sanctions" And not Changing Prison Policy to Allow him Access to A hearing when Disciplined Violated His Due Process Rights Afforded to him under the 14th Amendment And Article 1, 10, And 12 of the Massachusetts Constitution.

(96) Due to the Actions And Inactions of Defendants Mici, Demoura, And Hollomon in Deny Plaintiff Access to Religious Services for over Two years, Defendants have denied Plaintiff His Religious Rights under the 1st Amendment, MGL Ch. 127. §88, the 103 CMR's 471 And Article 2 Part One of Mass. Constitution.

(17)

WHEREFORE, plaintiff request that the Court grant the Following relief:

A. Issue A declaratory judgement stating that:
①  by upholding "guilty sanctions", by not changing Prison Policy to Allow Plaintiff Access to hearings, Defendants Demoura and Mici violated Plaintiffs Due Process Rights Under the 14th Amendment And Art. 1, 10, 12 of Massachusetts Constitution.

②  by Deny Plaintiff Access to Jumah Services And Religious Practices For over Two years Defendants Mici, Demoura, And Holloman have Violated Plaintiffs Freedom of Religion Rights granted to Him under the 1st Amendment, MGL. Ch 127 §88, 103 CMR 471, And Article 2 Part One of the Massachusetts Constitution.

B. Issue An Injunction ordering Defendants or their Agents to:
①  Expunge Any Disciplinary Infractions described in this Complaint From plaintiffs institutional record.

②  to Change Any And All existing policies to Show that plaintiff will have due process protections In the Future.

(18)

C. Issue An Injunction ordering defendants or
   their Agent to:
   ① Provide Plaintiff Access to Jumah Services VIA
      CD Rom where Services Are performed by A
      member of the Nation of Islam in Law Library.

   ② or in the Alternative, to Provide Plaintiff Access
      to Jumah Services VIA Closed-Circuit Television
      System in the cell on each Friday.

D. Award Compensatory Damages in the following Amounts:
   ① $5,000 per Constitutional Violation Jointly and Severally
      Against Defendants Mici, Demoura, And Hollomon For
      denying Plaintiff Access to Religious Practices For over 2 years.

   ② $5,000 per Constitution Violation Jointly And Severally
      Against Defendants Mici And Demoura For deny Plaintiff
      Access to due Process Hearings.

E. Award Punitive damages in the following Amounts:
   ① $5000 per Constitutional Violation (Totaling $570,000)
      Jointly And Severally Against Defendants Mici, Demoura,
      And Hollomon.

(19)

F. Grant Such other Addition relief As it may
   Appear that plaintiff is entitled.
G. Plaintiff Request trial by jury.


DAted: August 19, 2020     Derek Cryer
                           W55424
                           P.O. Box 100
CC: Filel                  S. Walpole, MA. 02071


(20)